# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| *In re Red Roof Inns, Inc. Data Incident Litigation* | Case No.: 2:23-cv-4133 |
|  | Chief Judge Sarah D. Morrison |
|  | Magistrate Judge Chelsey M. Vascura |
|  | **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT** |

Under Fed. R. Civ. P. 23(e), Plaintiffs Rebecca Richardson, Vail Pinkston McCall, and Viomar Sena (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, hereby move this Court for Preliminary Approval of a proposed $550,000 non-reversionary common fund class action settlement.

In support thereof, Plaintiffs rely upon the following Memorandum in Support of their Motion for Preliminary Approval of Class Action Settlement; the Settlement Agreement ("Settlement Agreement") attached as **Exhibit 1**; the Declaration of Terence R. Coates in Support of Preliminary Approval of Class Action Settlement ("Counsel Decl.") attached as **Exhibit 2**; the Declaration of Jessie T. Montague Regarding Notice Administration attached as **Exhibit 3**; the records, pleadings, and papers filed in this Action; and such other evidence or argument that may be presented to the Court. A Proposed Order Granting Preliminary Approval to the Class Action Settlement is attached as **Exhibit 4**.

Under S.D. Ohio Civ. R. 7.3(a), Plaintiffs consulted with Defendant before filing this Motion and determined that this Motion is unopposed.

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

Plaintiffs and the proposed Class have reached a nationwide class action settlement with Defendant Red Roof Inns, Inc. ("Defendant" or "Red Roof") for a $550,000 non-reversionary common fund to resolve claims arising from the September 2023 breach of Defendant's systems that impacted approximately 27,327 individuals (the "Data Incident"). *See* Settlement Agreement, generally.

The Settlement provides significant relief and lies well within the range of reasonableness necessary for this Court to grant preliminary approval thereof under Rule 23(e). *See* Counsel Decl., ¶ 20. The Court should, therefore, preliminarily approve the Settlement; direct that notice be sent to all Settlement Class Members in the reasonable manner outlined below; set deadlines for exclusions, objections, and briefing on Plaintiffs' Motion for Final Approval and Motion for Attorneys' Fees, Reimbursement of Expenses, and Class Representative Service Awards; and set a Final Approval Hearing date.

### II.   BACKGROUND

#### A.    Procedural History

This is a nationwide class action brought by Plaintiffs on behalf of themselves and a nationwide class consisting of "all individuals residing in the United States who were sent notification by Red Roof that their Personal Information was potentially compromised in the Data Incident." S.A., ¶ 36.

This case arises from the alleged compromise of personally identifiable information ("PII") as a result of a September 2023 cyberattack experienced by Red Roof. In response to the Data Incident, Defendant sent a notice of the Data Incident ("Notice Letter") to each impacted individual providing a description of the type of Personal Information involved, and explaining that the data

was accessed from Red Roof's systems. Each Plaintiff received a Notice Letter dated on or about December 8, 2023, from Defendant informing them about the Data Incident and that their Personal Information may have been compromised.

In response, Plaintiff Viomar Sena filed his class action complaint. Subsequent related Complaints were later filed, and on March 29, 2024, the Court entered an order consolidating the related actions. Doc. No. 7.

On April 29, 2024, Plaintiffs filed their Consolidated Class Action Complaint (Doc. No. 12, or "CAC"), asserting claims for Negligence (Count I), Negligence Per Se (Count II), Breach of Implied Contract (Count III), Invasion of Privacy (Count IV), unjust Enrichment (Count V) and Declaratory Judgment (Count VI). *See* CAC *passim*. Following the filing of the CAC, the parties agreed to attend mediation with renowned mediator Bennett G. Picker of Stradley Ronon Stevens & Young on March 27, 2024. Counsel Decl., ¶ 7. Before mediation, Defendant produced informal discovery, which allowed the parties to evaluate each side's respective position, including information about class size, insurance coverage, and potential defenses. *Id*. The Parties came to an agreement in principle at the mediation session and spent the next several months negotiating the finer points of the Settlement. Ultimately the Parties resolved the case for a common fund settlement of $550,000 on behalf of approximately 27,327 impacted individuals. The Settlement Agreement will resolve all claims related to the Data Incident for the Class.

Accordingly, Plaintiffs respectfully move this Court to preliminarily approve the Settlement Agreement and Notice Plan as detailed herein.

**B.** **Summary of Settlement Terms**

Under the proposed settlement, Defendant will pay $550,000 to establish the Settlement Fund to be distributed under the Settlement Agreement. The Settlement defines the Class as:

> **[T]he persons who are identified on the Settlement Class List, including all individuals residing in the United States who were sent notification by Red Roof that their Personal Information was potentially compromised in the Data Incident.**

S.A., ¶ 36. The Class specifically excludes: (1) the judges presiding over this Action, and members of their direct families; (2) Red Roof, its subsidiaries, parent companies, successors, predecessors, and any entity in which Red Roof or its parents have a controlling interest and their current or former officers and directors; and (3) Settlement Class Members who submit a valid a Request for Exclusion prior to the Opt-Out Deadline. *Id.*

The Class is comprised of approximately 27,327 individuals nationwide. Under the proposed Settlement, Defendant agrees to pay a total of $550,000 into the Settlement Fund, which will be used to make payments to Class Members and to pay the costs of Settlement Administration, attorneys' fees and expenses, and Service Awards to Plaintiffs. *See id.* ¶ 47. Furthermore, Defendant implemented business practice changes to improve Defendant's information security following the Data Incident. *See id.* ¶ 64.

### 1. Settlement Benefits

The Settlement Fund will provide broad relief to the Class and offer several categories of relief. First, Settlement Class Members may make a claim for Out-of-Pocket Losses up to a maximum of Ten Thousand Dollars and Zero Cents ($10,000.00). *Id.* ¶ 49. "Out-of-Pocket Losses" are unreimbursed costs or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Incident including, without limitation, the following: (i) unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of class member's personal information; (ii) costs incurred on or after September 21, 2023, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any

credit reporting agency; and (iii) other miscellaneous expenses incurred related to any Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges. *Id*.

Next, all Settlement Class Members may submit a claim for an estimated Pro Rata Cash Payment of One Hundred Dollars and Zero Cents ($100.00). *Id.* ¶ 52. This Pro Rata Cash Payment may be adjusted pro rata after the payment of any documented monetary losses as described herein, and after payment of attorneys' fees and expenses, the proposed Class Representatives' Service Awards, and the costs of Settlement Administration. *Id*. ¶¶ 60-61.

Further, in the event that the aggregate amount of all Settlement Payments does not exceed the Net Settlement Fund, and the remaining amount is not *de minimis* (as determined by Class Counsel and Red Roof's Counsel based on calculations provided by the Settlement Administrator), then each Settlement Class Member who is entitled to receive payment for an Approved Claim for Pro Rata Cash Payment(s) shall receive funds increased on a *pro rata* basis so that the Net Settlement Fund is depleted. *Id*. ¶ 62. In this event, under no circumstances shall a Settlement Class Member receive more than two (2) times the value of an Approved Claim for Pro Rata Cash Payment(s), or more than Two Hundred Dollars and Zero Cents ($200.00). *Id*.

Any funds that remain after the distribution and reissuance of all payments from the Settlement Fund, including for settlement checks that are not cashed by the deadline to do so, will be paid to the Non-Profit Residual Recipient. *Id*. ¶¶ 47, 63.

### 2.  Scope of the Release

In exchange for consideration above, Settlement Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Defendant from claims arising from or related to the Data Incident at issue in this Action. S.A., ¶¶ 83-85.

### 3.  The Notice and Administration Plans[1]

Under the Settlement Agreement, Class Counsel, with Defendant's approval, has selected RG2 Claims Administration, LLC ("RG2") to be the Settlement Administrator who will provide the Class with notice and administer the claims. Defendant shall create a "Class List" of potential Class Members including their full names and current or last known addresses. *See* S.A. ¶¶ 37, 67. Class Counsel contacted several settlement administrators before selecting RG2 as the appropriate settlement administrator for this case. Counsel Decl., ¶¶ 11-12.

Class Counsel's decision, with Defendant's consent, to select RG2 was based on the scope of settlement administration RG2 proposed, balanced against the cost for such services. *Id*. Class Counsel understands that any settlement administration costs and expenses will be deducted from the Settlement Fund and, with that understanding, endeavored to select a settlement administrator for this case offering the broad services for a price that is favorable to the Class. *Id*.

The Settlement Administrator will provide written Short Form Notice to Settlement Class Members through direct mail. S.A., ¶¶ 67, 69. The Short Form Notice will be sent in a form substantially similar to that attached as Exhibit D to the Settlement Agreement, and will clearly and concisely inform Settlement Class Members of the amount of the Settlement Fund, that they may do nothing and be bound by the Settlement, object, exclude themselves by completing the exclusion form and not be bound by the Settlement, or make a claim by completing and returning a Claim Form and be bound by the Settlement. The Settlement Administrator will also publish a Long Form Notice and Claim Form on the Settlement Website established and administered by the Settlement Administrator, which shall contain information about the settlement, including

---

[1] The Notice Program is described in detail in the Declaration of Jessie T. Montague Regarding Notice Administration ("Admin. Dec."), attached hereto as **Exhibit 3.**

copies of the notice, the Settlement Agreement, and all court documents related to the settlement. *Id*. ¶ 67. The Settlement Administrator will also send a Reminder Notice to Settlement Class Members within forty-five (45) days after the date that Notice is disseminated to Settlement Class Members, but no sooner than thirty (30) days after such date, with such Reminder Notice going to members of the Settlement Class who have not submitted a Claim Form. *Id*. ¶ 68.

### 4. Attorneys' Fees, Costs, Expenses, and Service Awards

Plaintiffs will also separately seek an award of attorneys' fees not to exceed one third of the Settlement Fund (*i.e.*, $183,333.33), and for reimbursement of Class Counsel's reasonable costs and litigation expenses not to exceed Twenty-Five Thousand Dollars and Zero Cents ($25,000.00), which shall be paid from the Settlement Fund. S.A., ¶ 88. The motion will be filed at least fourteen (14) days before Objection/Opt-Out Deadline. The Settlement Agreement further provides for a payment of up to Five Thousand Dollars and Zero Cents ($5,000.00) each, for a total of Fifteen Thousand Dollars and Zero Cents ($15,000.00), subject to Court Approval, to Plaintiffs as Service Awards for their services in representing the Class. *Id.* ¶ 86.

## III. LEGAL STANDARD

Settlement of class actions is generally favored and encouraged. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Fed. R. Civ. P. 23(e) provides three steps for approving a proposed class action settlement: (1) the Court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a final fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable, and adequate. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 372 (S.D. Ohio 2006); *see also Amos v. PPG Indus., Inc.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015).

During the preliminary approval proceedings, "the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." David F. Herr, *Annotated Manual for Complex Litigation (Fourth)* § 21.662 (2012). Instead, the Court should evaluate only whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Hyland v. Homeservs. of Am., Inc.*, No. 3:05-CV-612, 2009 WL 2525587, at *2 (W.D. Ky. Aug. 17, 2009) (citing *In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y.1997)).[2] The Court should preliminarily determine that the settlement is sufficiently fair, reasonable, and adequate so that it can "direct the preparation of notice of certification, proposed settlement, and date of the final fairness hearing" to all those affected by it. *In re Skechers Toning Shoe Prod. Liab. Litig.*, No. 3:11-MD-2308, 2012 WL 3312668, at *7 (W.D. Ky. Aug. 13, 2012).[3]

## IV.    ARGUMENT

### A.    The Proposed Settlement Satisfies the Standard for Preliminary Approval

#### 1.  The Proposed Settlement Is the Product of Arms-Length Negotiations between Experienced Professionals

Arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements. *See, e.g.*, *Roland v. Convergys Customer Mgmt. Grp. Inc.*, No. 1:15-CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was

---

[2] *See also Bautista v. Twin Lakes Farms, Inc.*, No. 1:04-CV-483, 2007 WL 329162, at *4 (W.D. Mich. Jan. 31, 2007) ("The court's role in reviewing settlements must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement taken as a whole is fair, reasonable, and adequate to all concerned.") (internal quotes omitted).

[3] *See also In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-CV-12141, 2014 WL 8335997, at *3 (E.D. Mich. Oct. 2, 2014) ("The ultimate approval of a class action settlement requires a finding that the settlement is fair, adequate, and reasonable.").

"reached after good faith, arms' length negotiations, warranting a presumption in favor of approval"); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001) (absence of any evidence suggesting collusion or illegality "lends toward a determination that the agreed proposed settlement was fair, adequate and reasonable").

Here, the Settlement was the result of intensive, arm's-length negotiations between attorneys who have extensive class action litigation experience and who have knowledge of the legal and factual issues of the Action. Counsel Decl., ¶¶ 7-8. Settlement negotiations took place over the course of several months and involved a mediation session with an experienced class action mediator. *Id*. No collusion or illegality existed during the settlement process. *Id*. Class Counsel, without any opposition from Defendant, support the Settlement as fair and reasonable, and all certify that it was reached at arms' length. *Id*. ¶ 20.

### 2. The Proposed Settlement Falls within the Range of Reasonableness and Warrants Issuance of Notice and a Final Approval Hearing

Although Plaintiffs believe that the claims asserted in this Action are meritorious and the Class would ultimately prevail at trial, continued litigation against Defendant poses significant risks that make any recovery for the Class uncertain. The fairness and adequacy of the Settlement is underscored by consideration of the obstacles that the Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. *See Amos*, 2015 WL 4881459, at *1 ("In general, most class action are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them.") (internal citations and quotations omitted).[4] Furthermore, the Settlement is in line with other recent data breach

---

[4] Courts have experienced the protracted litigation often required to simply get past the pleading stage in similar actions. *See, e.g.*, *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186, 2017 WL 5986972, at *13 (W.D. Ky. Dec. 1, 2017) (granting in part and denying in part motion to dismiss

settlements in terms of the amount recovered per Class Member. Counsel Decl., ¶ 17. Despite the risks involved with further litigation, the Settlement Agreement provides outstanding benefits. Class Members have the ability to claim documented losses up to $10,000, a Pro Rata Cash Payment, and will benefit from the business practice changes enacted by Defendant.

### 3. The Proposed Settlement Has No Obvious Deficiencies.

There are no grounds to doubt the fairness of the proposed settlement or other obvious deficiencies, such as unduly preferred treatment of Plaintiffs or excessive attorney compensation. *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 271 (E.D. Ky. 2009). Plaintiffs, like all other Settlement Class Members, will receive their settlement benefit(s) in accordance with a claim process approved by the Court and executed by an experienced Settlement Administrator.

The matter of attorneys' fees and payment of expenses, as well as any Service Awards for Plaintiffs, will be determined by the Court. Proposed Class Counsel has agreed to limit their attorneys' fee request to one-third of the Settlement Fund ($183,333.33), which is well within the range of fees awarded within the Sixth Circuit. *See, e.g., In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986) (in the Sixth Circuit, attorneys' fees "typically … range from 20% - 50%"); *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2022 WL 4385345, at *2 (E.D. Mich. Sept. 22, 2022) (a fee request of 1/3 of the class action settlement fund "is within the range of fee awards made by courts in this Circuit"); *Walker v. Nautilus, Inc.*, No. 2:20-cv-3414-EAS (S.D. Ohio June 27, 2022) (awarding attorneys' fees of 1/3 of the $4.25 million common fund); *Bechtel v. Fitness Equip. Servs., LLC*, No. 1:19-cv-726-KLL (S.D. Ohio Sept. 30,

---

complaint in data breach action involving employee PII); *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-186, 2020 WL 265206, at *7 (W.D. Ky. Jan. 17, 2020) (dismissing all additional claims brought by the plaintiffs in amended complaint); *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186, 2021 WL 3076786, at *1 (W.D. Ky. July 1, 2021) (granting leave to file second amended complaint over defendant's objection).

2022) (Doc. No. 73, PageID 1579) (awarding attorneys' fees of 1/3 of the $3.65 million common fund); *see also* Counsel Decl., ¶ 14.

Furthermore, courts within the Sixth Circuit have recently granted attorneys' fees of one-third of the common fund in similar data breach class action cases. *Migliaccio v. Parker Hannifin, Corp.*, No. 1:22-cv-835-DAP (N.D. Ohio Aug. 2, 2023; Doc. 42, ¶ 7) ($583,333.33 fee award from a $1,750,000 common fund in a data breach class action settlement); *Tucker v. Marietta Area Health Care Inc.*, No. 1:11-cv-184-SDM (S.D. Ohio Dec. 8, 2023; Doc. 13, ¶ 7) ($583,333.33 fee award from a $1,750,000 common fund in a data breach class action settlement); *Phelps v. Toyotetsu N. Am.*, No. 6:22-cv-106 (E.D. Ky. Oct. 25, 2023; Doc. No. 47, PageID 542) (granting attorneys' fees of one-third of the common fund in a data breach class action settlement); *In re Marshall & Melhorn, LLC Data Breach Litig.*, No 3:23-cv-1181 (N.D. Ohio Jan. 13, 2025; Doc. 34, ¶ 7) (same). Plaintiffs further seek Service Awards of up to $5,000 each for their active involvement in this Action. S.A., ¶ 86. This amount aligns with amounts awarded in similar data breach settlements, including *Parker Hannifin* ($3,500 service award to each class representative), *Marietta Area Health Care* ($5,000 service award to each class representative), *Toyotetsu* ($5,000 service award), and *Jackson v. Nationwide Ret. Sols., Inc.*, No. 2:22-cv-3499, 2024 WL 958726, at * 7 (S.D. Ohio. Mar. 5, 2024) ($5,000 service awards in a data breach class action settlement). Because Plaintiffs and Class Counsel will move for an award of costs, fees, expenses, and the Plaintiffs' Service Awards at least fourteen (14) days before the objection and opt out deadlines, the Court will have the ability to consider these requests and the Class's response to them, if any, when evaluating whether to grant final approval of class action settlement.

For the foregoing reasons, the Court should find that the proposed settlement is fair, reasonable, and adequately protects the interests of the proposed Class.

### B. Certification of the Settlement Class Is Appropriate

The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S 591, 620 (1997). For the Court to certify a class, Plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b). *See Pelzer v. Vassalle*, 655 F. App'x 352, 363 (6th Cir. 2016). The four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy. Plaintiffs seek certification of the Class under Rule 23(b)(3), which provides that certification is appropriate where "the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Fed. R. Civ. P. 23(b)(3).

### 1. Numerosity

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all Class Members is impracticable. Fed. R. Civ. P. 23(a)(1). "There is no specific number below which class action relief is automatically precluded. Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir.1976); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996) ("the Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement"); *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 105 F.R.D. 506, 508 (S.D. Ohio 1985) (certifying a 23-person class). The approximately 27,327 Settlement Class Members in this Action satisfy the numerosity element.

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* (Internal quotation marks and citation omitted).

Plaintiffs' claims turn on whether Defendant's security environment was adequate to protect Settlement Class Members' Personal Information. Resolution of that inquiry revolves around evidence that does not vary from class member to class member, and so can be fairly resolved—at least for purposes of settlement—for all Settlement Class Members at once.

### 3. Typicality

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members." *Chesher v. Neyer*, 215 F.R.D. 544, 549 (S.D. Ohio 2003). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.*; *Am. Med. Sys.*, 75 F.3d at 1082. Typicality seeks to ensure that there are no conflicts between the class representatives' claims and the claims of the Class Members represented. Here, the claims all involve Defendant's conduct

impacting the Settlement Class Members, and Plaintiffs' and the Class's claims are based on the same legal theories. Thus, Plaintiffs' claims are typical of those of the claims of the Settlement Class, and they are appropriate Class Representatives.

### 4. Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two criteria: (1) the "representative must have common interests with unnamed members of the class," and (2) "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Am. Med. Sys.*, 75 F.3d at 1083 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525). Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 594. Plaintiffs have no conflicts with the Class and have participated actively in the case. Counsel Decl., ¶ 18. Moreover, proposed Settlement Class Counsel have significant experience in class and complex litigation, and have collectively been appointed Class Counsel in hundreds of data breach class actions in state and federal courts throughout the country. *Id.*, ¶¶ 2-4.

### 5. Certification under Rule 23(b)(3) Is Appropriate

Class certification under Rule 23(b)(3) has two components: predominance and superiority. "The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in 'that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues.'" *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *6 (W.D. Ky. Dec. 22, 2009) (quoting *Am. Med. Sys.*, 75 F.3d at 1084). When assessing these components, the court may consider that the class will be certified for

settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 (on a request for settlement-only class certification, "a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial").

The Sixth Circuit has explained that "named plaintiffs must show, and district courts must find, that questions of law or fact common to members of the class predominate over any questions that affect only individual members." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 860 (6th Cir. 2013). Also, the court considers whether a class action is "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination. These factors include: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. *Willis v. Big Lots, Inc.*, No. 2:12-CV-604, 2017 WL 1063479, at *2 (S.D. Ohio Mar. 17, 2017) (citing Fed. R. Civ. P. 23(b)(3)).

### a. *Common Questions of Law and Fact Predominate over the Settlement Class*

Here, the common factual and legal questions all cut to the issues "at the heart of the litigation." Indeed, the answers to these questions are not tangential or theoretical such that the litigation will not be advanced by certification. Rather, they go right to the center of the controversy, and the answers will be the same for each Settlement Class Member. As such, because the class-wide determination of this issue will be the same for everyone, the predominance requirement is readily satisfied.

### b.  A Settlement Class Is the Superior Method of Adjudicating this Case

The second prong of Rule 23(b)(3)—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy—is also readily satisfied. See Fed. R. Civ. P. 23(b)(3). The Settlement Agreement provides members of the Class with quick, simple, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Settlement Class Member who is dissatisfied with the settlement to object to it or to request exclusion from the Settlement Class. Moreover, the cost of litigating each Settlement Class Member's case on an individual basis would be substantial for each Settlement Class Member; the most reasonable and economically feasible method of litigating and resolving these hundreds of claims is through the class device. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device" (internal quotations omitted).

Adjudicating individual actions here is impracticable. The amount in dispute for individual class members is too small, the technical issues are too complex, and the required expert testimony and document review would be far too costly. In no case is the individual amount at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Instead, the individual prosecution of Settlement Class Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a

15

district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there will be no trial").

    **C.**    **The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Class Action Administrator**

The above-named Plaintiffs also seek to be appointed as Class Representatives for the Settlement Class. Plaintiffs have put forth significant effort on behalf of the Settlement Class, including by cooperating with counsel, assisting in the preparation of the Complaints and consolidation thereof, reviewing and approving the settlement demand, and approving the terms of the Settlement on behalf of the Settlement Class. Counsel Decl., ¶ 18. Moreover, Plaintiffs are committed to continuing to vigorously prosecute the Action, including overseeing the Notice Plan, and defending the Settlement Agreement against any objectors, all the way through the Court's final approval. Because they are adequate representatives, the Court should appoint them as class representatives.

The Court should also designate Terence R. Coates of Markovits, Stock & DeMarco, LLC Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, Raina Borrelli of Strauss Borrelli PLLC, and Tyler J. Bean of Siri & Glimstad LLP as Class Counsel. As discussed previously, and in more detail in the firm resumes attached as Exhibits A-D to the Declaration of Terence R. Coates in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement submitted herewith, proposed Class Counsel here have decades of combined experienced service as class counsel in hundreds of data breach class actions throughout the country. Class Counsel in this matter have zealously represented Plaintiffs and the Settlement Class, and were able to use their expertise to negotiate an excellent settlement in spite of the significant risks inherent in this emerging area of the law.

Finally, the Parties have agreed that RG2 shall act as Settlement Administrator. Counsel Decl., ¶ 12. RG2 and its principals have a long history of successful settlement administrations in class actions. *Id*. The Court should appoint RG2 as Settlement Administrator here.

### D. The Proposed Form and Manner of Notice Is Reasonable and Should Be Approved

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P.23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy these standards and "comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *In re Countrywide*, 2009 WL 5184352, at *12 (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)).

The Notice Plan set forth in the Settlement Agreement provides the best notice practicable under the circumstances. The Settlement Notice will be disseminated to all persons who fall within the definition of the Class and whose names and addresses can be identified with reasonable effort from Defendant's records, and through databases tracking nationwide addresses and address changes. RG2 will also administer a Settlement Website containing important and up-to-date information about the Settlement.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Here, the proposed Notice Plan satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Class Counsel will apply to the Court for attorneys' fees of no more than 1/3 of the Settlement Fund ($183,333.33), plus reimbursement of litigation costs and expenses up to

$25,000. The proposed Notice Plan complies with Rule 23 and due process because it informs Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Class, the claims asserted, and the benefits offered; (3) the binding effect of a judgment if a Settlement Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that one may make an appearance through counsel; (5) information regarding the Class Representatives' request for Service Awards; (6) information regarding the payment of proposed Class Counsel fees; and (7) how to make inquiries about the Settlement. Fed. R. Civ. P. 23(c)(2)(B).

Thus, the Notice Plan and Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). The manner of notice, which includes individual notice by mail or email to all those who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies due process and Rule 23. *Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740, 745 (S.D. Ohio 2004). Thus, the Notice Plan should be approved. Fed. R. Civ. P. 23(c)(2)(A).

### E. The Court Should Provide a Schedule Leading up to the Final Approval Hearing

Plaintiffs request that the Court set a schedule leading up to the Final Approval Hearing that would include, *inter alia*, deadlines for notice to Settlement Class Members, for Settlement Class Members to object to, opt out of, or make claims under the Settlement, and for the filing of an application for attorneys' fees, expenses, and service awards, and papers in support of final approval. A proposed schedule is included in the proposed Preliminary Approval Order. At the Final Approval Hearing, the Court may hear all evidence and oral argument necessary to make its final evaluation of the settlement. *See* Fed. R. Civ. P. 23(e)(2).

## V.     CONCLUSION

Plaintiffs respectfully request that the Court grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. A proposed Order Granting Preliminary Approval of Class Action Settlement is attached hereto as **Exhibit 4**.

Respectfully submitted,

Dated: January 24, 2024

*/s/ Terence R. Coates*
Terence R. Coates (0085579)
Jonathan T. Deters (0093976)
Dylan J. Gould (0097954)
MARKOVITS, STOCK & DEMARCO, LLC
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
tcoates@msdlegal.com
jdeters@msdlegal.com
dgould@msdlegal.com

Gary M. Klinger (*pro hac vice*)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
227 Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
Email: gklinger@milberg.com

Samuel J. Strauss *
Raina Borrelli (*pro hac vice*)
Brittany Resch *
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 North Michigan Avenue, Suite 1610
Chicago, Illinois 60601
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com
brittanyr@straussborrelli.com

Christopher D. Wiest (0077931)
Chris Wiest, Attorney at Law, PLLC

50 E. Rivercenter Blvd, Ste. 1280
Covington, KY 41011
Tel: (513) 257-1895
E: chris@cwiestlaw.com

Mason Barney*
Tyler Bean*
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: mbarney@sirillp.com
E: tbean@sirillp.com

*Plaintiffs' and Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 24, 2025, I served a copy of the foregoing upon counsel for all parties by filing it with the Court's electronic-filing system in accordance with Fed. R. Civ. P. 5(b)(2)(E).

*/s/ Terence R. Coates*

Terence R. Coates
